MARTEN C. BUTLER AND MARGIE BUTLER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Butler v. Commissioner
Docket No. 23818-81.
United States Tax Court
T.C. Memo 1985-308; 1985 Tax Ct. Memo LEXIS 325; 50 T.C.M. (CCH) 218; T.C.M. (RIA) 85308; June 25, 1985. Marten C. Butler, pro se. John J. Morrison, for the respondent. SHIELDS MEMORANDUM FINDINGS OF FACT AND OPINION SHIELDS, Judge: In his deficiency *326 notice respondent determined that for 1975 both petitioners were liable for a deficiency in income tax in the amount of $3,051.90 and an addition to tax under section 6651(a) [1] in the amount of $379.91. By an amendment to his answer, respondent determined that petitioner, Marten C. Butler, was liable for an addition to tax for fraud under section 6653(b) in the amount of $2,189.71, or in the alternative to the fraud addition due from Mr. Butler under section 6653(b), both petitioners were liable for the addition to tax under section 6653(a) in the amount of $218.97 as well as the addition to tax under section 6651(a) in the amount of $379.61 as previously set forth in the notice of deficiency. The issues are: (1) whether petitioners are entitled to a deduction in 1975 for a charitable contribution, and if so, the amount thereof; (2) whether Marten C. Butler is liable in 1975 for an addition to tax under section 6653(b); *327 and (3) in the alternative, if no fraud is found under (2), whether both petitioners are liable for additions to tax under sections 6651(a) and 6653(a) in the respective amounts of $379.61 and $218.97. FINDINGS OF FACT Some of the facts have been stipulated and are so found, the stipulation and related exhibits being incorporated herein by reference. Marten C. and Margie Butler, husband and wife, resided in Leland, Illinois during 1975 and at the time their petition was filed in this case. They filed a delinquent joint income tax return for the year 1975 with the District Director of Internal Revenue in Ottowa, Illinois. Petitioner, [2] Marten C. Butler, is an intelligent, selfeducated man. He received a two year college equivalency certificate while in the United States Armed Forces and thereafter completed a course in accounting at Aurora College. For several years prior to 1975, petitioner maintained complete and accurate records of his and his parent's income and expenses from which he prepared his own and his parents' income tax returns. Some of these returns were audited without change by agents of respondent. *328 During 1975 and until he retired in July of 1978, petitioner was a farmer and a correctional officer at the Sheridan Correctional Center, a penal institution operated by the State of Illinois. At Sheridan, where he was employed for over 10 years, he was responsible for helping to provide security, custody and control of the inmates. For years petitioner had at times been involved in scouting through the "Explorers" club and beginning in 1962 he and his wife had also hosted international guests at their home through a program operated by a Chicago organization known as the International Visitors Center (IVC), formerly the International Hospitality Center. However, from the record before us we can find that between 1962 and 1979 this hosting consisted of no more than four one-day overnight visits and one eight-day visit by foreign visitors. For a fee of $35.00 petitioner attended on November 22, 1975, a "Tax Strike Convention" in Denver, Colorado. While there he obtained information on how to form an independent church. A few days later he discussed the idea of forming his own church with family members at a Thanksgiving Day gathering. Petitioners contend that at this meeting *329 they formed the "Libertarian Church of the Golden Rule of Leland, Illinois." They admit that the avoidance of income taxes was a factor in deciding to form the alleged church. On December 17, 1975, petitioner paid $250 to the "Church of the Golden Rule" in Arizona for a package containing materials for use in the formation of a church. With these materials, petitioner drafted a document entitled "Constitution of Libertarian Church of the Golden Rule." It provides among other things: (1) that the nomination and election of trustees will be made from the membership of the church; (2) that no part of the assets or earnings of the church will inure to the benefit of individual members; (3) that annual business meetings will be held and that minutes of such meetings will be kept; (4) that reports will be made at the annual meetings on the business and affairs of the church; and (5) that accounts of pledges and contributions made to the church will be maintained and that such accounts will be subjected to audits. During 1975 and subsequent years up to the date of trial, none of these provisions were complied with and the record contains no documentary evidence of the affairs *330 of the alleged church except a document in the form of an affidavit signed by petitioner and bearing the date of December 29, 1975, which states that the members of the "Libertarian Church of the Golden Rule" held a meeting on November 27, 1975 at which they adopted a corporate name and elected the following individuals as trustees: Individual
Relation to Petitioner
Marten C. Butler
Self
Margie Butler
Spouse
Wendy Butler
Daughter
Edward Butler
Son
Stephen Butler
Son
Lawrence S. Butler
Brother
John E. Barrett
Brother-in-law Petitioner's brougher, Lawrence S. Butler, was subpoenaed by respondent and testified at the trial after the Court refused to grant petitioner's motion to quash his subpoena. At the Thanksgiving gathering in petitioner's home in 1975, he overheard some comments made by petitioner about the possible formation of a church to be known as Libertarian Church of the Golden Rule. He also understood he was to be designated a trustee of the church, but he never attended any meetings, took no part in any church services and at some date after the following June was told by his wife that he was "no longer needed as trustee." Lawrence *331 S. Butler is a lifelong member of the Congregational Church of Somonauk and was never a member of the church allegedly formed by his brother and knew no such members. Petitioner's brother-in-law, John E. Barrett, was also subpoenaed by respondent and testified at the trial after the Court refused to quash his subpoena. He too was present at the Thanksgiving gathering in 1975 and heard petitioner's comments about forming a church to help with his scout work and the hosting of foreign visitors. At petitioner's request he agreed to be a trustee and the chairman of the board of trustees in order to get the church started, but asked to be replaced in 1976. He is a member of the Catholic faith, was never a member, other than as a trustee, of the church allegedly formed by petitioner and knew of no persons who claimed to be members other than petitioner, his wife and their three children. Neither John E. Barrett nor Lawrence S. Butler were aware of any service ever performed by petitioner as a minister except some weddings which did not have to be performed in Illinois by a minister or other member of a religious order. Both prior to and after December 26, 1975 petitioners *332 had joint checking and savings accounts in their individual names at the Leland National Bank. On December 26, 1975, petitioners opened a checking account and a savings account at the Leland National Bank in the name of the "Libertarian Church of the Golden Rule." [3] Each petitioner and their daughter, Wendy Butler, were authorized signatories on the church accounts. On the same date, a $500 check was deposited in the church's checking account and a $10,500 check was deposited in the church's savings account. These checks were drawn on petitioners' personal checking account and were signed by Marten C. Butler. Petitioners admit that these funds were later used to pay for their personal living expenses and the expenses of operating their farm. On December 27, 1975, Mr. Butler borrowed $16,000 on a loan account which he had in his own name at the Leland National Bank. When the new loan was added to the account's *333 previous balance of $10,000 the principal amount due was increased to $26,000. This account was paid in full together with interest on March 20, 1976 with a check drawn on the church's checking account. The source of the funds for this payment was the sale of 13,333 bushels of corn delivered by petitioner to the Leland Farmers' Company in exchange for a check in the amount of $34,266.76. Petitioner deposited this check in the church's checking account and on the same day paid off the $26,000 loan plus interest with a check drawn on the church's account. On December 30, 1975, petitioner executed a document which purported to be a vow of poverty and an irrevocable gift of all his worldly possessions and future income to the "Libertarian Church of the Golden Rule." After that date, petitioner maintained checking and savings accounts in his own name, held title to automobiles, farm equipment and other personal property and repeatedly used funds and other assets allegedly owned by the church for personal purposes and did not change his style or manner of living in any respect. On or about January 30, 1976, petitioner prepared a letter addressed to his employer Sheridan Correctional *334 Center. At petitioner's direction the letter was signed by John E. Barrett as chairman of the church's board of trustees. It falsely stated that because of petitioner's religious commitment, Mr. Butler was exempt from withholding of Federal and State income taxes. It also falsely stated that petitioner was a member of the Sacerdotal Order of the purported church and was required by such order to maintain his position at Sheridan. The letter was typed on stationery bearing a church letterhead and the imprint of a seal. On April 10, 1976, five days before his 1975 return was due, petitioner mailed to respondent a letter contining frivolous constitutional and Biblical objections to the use of the "dollar standard." The letter was accompanied by (1) an amended 1973 tax return for petitioners on Form 1040X which stated that in the preparation of the amended return Federal Reserve Notes were converted into constitutionally defined dollars; (2) a Form 1040 for 1973 bearing petitioners' names and claiming a refund of $4,460 in "Federal Res. Notes"; and (3) numerous attachments containing frivolous constitutional arguments. Both the Form 1040 and the Form 1040X were signed *335 by petitioners but were prepared by Arthur J. Porth, a previously convicted tax offender. [4]
After opening a second checking account in the name of the church at the Farmers State Bank in July of 1976, petitioner borrowed the following amounts in his own name but using as security for the loans property which he had allegedly given to the church: Date
Loan Amount
Security
July 13, 1976
$5,000
* 27 - 50 Pesos, Mexican
gold coins
* 20 - 100 Korona, Hungarian
gold coins
August 3, 1976
1,000
August 25, 1976
2,000
* 89 - $20 gold coins
October 22, 1976
4,000
LFC Warehouse receipt for
980 bushels of soybeans
December 6, 1976
7,000
LFC Warehouse receipt for
1970.62 bushels of soybeans On or about September 2, 1976, petitioner singed and filed with his employer a Form W-4E which falsely certified under penalties of perjury that he had incurred no liability for Federal *336 income tax in 1975 and that he anticipated that he would incur no liability for Federal income tax in 1976. On July 12, 1978, petitioners filed a delinquent joint tax return for the year 1975 which reflected a tax liability of $1,327.53 and requested a refund of $1,542.34. [5] On the return, they claimed a deduction in 1975 of $13,240.49 for a donation to a church of 13,333 bushels of corn worth $29,199.27. At the time of the trial Mr. Butler had not filed a return for any year subsequent to 1975. Mrs. Butler had filed separate returns for such years. The church allegedly formed by Mr. Butler has never applied for or received a ruling from the Internal Revenue Service that it is an exempt entity under section 501(c)(3) or that contributions to it qualify as deductible charitable contributions under section 170. At a meeting with a special agent of respondent which occurred on or about February 24, 1981, petitioner refused to disclose the name or identity of any member of his church or to produce any record relating to his farm income. Subsequently, petitioner wrote respondent *337 claiming harassment and requesting that any future questioning be done in writing by mail. At a later meeting with respondent's representatives which occurred on or about March 24, 1981, petitioner failed to produce any substantiation for the 1975 charitable contribution and refused to consent to an extension of the statute of limitations with respect to his 1975 income tax liability but by letter dated April 12, 1981, he attempted to substantiate the deduction by enclosing a copy of a car invoice and copies of the $500 and $10,500 checks written on December 26, 1975 to the alleged church. Respondent's representatives met again with petitioner on April 30, 1981. At this meeting, he refused to state any position or to make any comment with respect to the proposed disallowance of the deduction and again refused to extend the statute of limitations. At some point during respondent's investigation with respect to petitioners' 1975 tax liability Marten C. Butler began to use a felt tip pen in the preparation of his checks so that essential information such as the numbers, dates, amounts and names appearing on the checks would not reproduce. OPINION Respondent contends *338 that the addition to tax under section 6653(b) is due from Marten C. Butler for 1975 because his alleged formation of the Libertarian Church of the Golden Rule of Leland, Illinois and his alleged gifts thereto were nothing more than steps in a fraudulent scheme to evade the payment of income tax which he knew was due from him for 1975. Respondent further contends that Mr. Butler's fraudulent intent with respect to the scheme is apparent from his overall conduct including (1) the nature and extent of his knowledge with respect to tax laws and income tax returns in particular as demonstrated by his natural intelligence, education, experience and the preparation of proper returns for prior years; (2) his acquisition and use of instructions on how to form an alleged church; (3) the steps taken by him in an attempt to create the impression that he had created a church and made deductible contributions thereto; (4) his failure to file a timely income tax return for 1975; (5) his preparation and filing of a delinquent 1975 return for himself and his wife which contained a claim for the eduction of a charitable contribution in the amount of $13,240.49 which he knew was false; (6) his efforts *339 to mislead and impede respondent's agents during the investigation of his 1975 liability; and (7) the steps taken by him to cause false documents to be filed with his employer claiming that he had incurred no income tax liability for 1975 and that he was not subject to withholding in 1976. Petitioner contends that while the use of the alleged church and the gifts to it may have been technically defective, he was innocently led to believe that they were a legitimate method of handling his tax and personal affairs and there was no fraudulent intent on his part to avoid the payment of any income tax legally due from him and his wife. Section 170 [6] generally allows a deduction for a charitable contribution where the contribution is actually made to a qualified tax-exempt organization and no part of the net earnings of the organization inure to the taxpayer's benefit. , on appeal (9th Cir., June 25, 1984); ; , affd. without published opinion . *340 In the usual non-fraud case the taxpayer has the burden of proof with respect to a charitable deduction. Rule 142(a); . In this case, however, the nonexistence of the contribution and the non-qualification of the recipient to receive deductible contributions as well as the assertion that the earnings of the recipient inured to the benefit of petitioner are all part of the fraudulent scheme alleged by respondent. Their establishment, therefore, by clear and convincing evidence is part of the burden of proof which respondent must carry in this case. Section 7454(a); ; Rule 142(b). To carry his burden respondent must establish by such evidence that petitioner attempted to evade taxes which he knew or believed to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes. ; , affg. a Memorandum Opinion of this Court. *341 The existence of fraud is a question of fact to be resolved from a consideration of the entire record. ; , affd. without published opinion . It cannot be presumed. . It may, however, be proved by circumstantial evidence because direct proof of a taxpayer's fraudulent intent is rarely available. , affd. ; . His entire course of conduct may be used to establish the requisite intent. ; ; . We are mindful of the fact that this case involves a single item of deduction for only one taxable year. However, from a careful consideration of the entire record, we are satisfied that respondent *342 has clearly and convincingly proven that petitioner fraudulently intended to evade and defeat the payment of taxes legally due from him for the year 1975. The deliberate willful nature of Mr. Butler's intent clearly appears in a number of instances but in our opinion the best example is the fact that in April of 1976, petitioner, an intelligent, well-read and self-educated man, was obviously aware of his duty to file a timely income tax return for 1975 as demonstrated by his correct filings in earlier years. His only excuse for not filing the 1975 return on time was that he was too busy, but he was not too busy at that time to file an amended return for 1973 claiming a refund based on frivolous documents prepared by a convicted tax offender. His conduct as outlined in our findings from the date he attended the tax strike in Denver and continuing with the establishment of his purported church, the claiming of the unsubstantiated contributions to it, and the submission to his employer of a false letter and withholding certificate for 1976, all point to an intent to conceal his income and prevent the collection of any tax due. ; *343 ; As we stated in an earlier decision, "[i]t is hard to believe any individual, * * * could honestly believe that he could escape liability for income taxation and still enjoy unfettered use of all the income he received by so simple a step as the creation of [a] 'church'." . Petitioner enjoyed the fruits of his labor after he allegedly formed his church and executed the "vow of poverty" in the same manner and to the same extent as before. His use of property he had allegedly transferred to the church as collateral for personal loans and his obliteration of checks so that names and amounts would not reproduce when copied "not only undermines petitioner's credibility, but more importantly, shows that in setting up the 'church' and becoming a minister, he was motivated by the prospect of tax savings, not by religious conviction." . Finally, petitioner's refusal to cooperate with respondent's agents in an attempt to determine his *344 correct tax liability is a further indication of his fraudulent intent. ; ; . In view of all the foregoing we sustain respondent's determinations that the charitable deduction should be disallowed and that Marten C. Butler is liable for the additions to tax provided by section 6653(b). [7]
Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue, unless otherwise indicated. All rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise provided.↩
2. Since respondent did not determine a fraud addition against Margie Butler, the word "petitioner" in the singular will hereinafter refer only to Marten C. Butler.↩
3. Petitioners opened a second checking account in the name of the alleged church at Farmers State Bank of Somonauk, Illinois, in July of 1976. The authorized signatures on this account were Marten C. Butler, Margie Butler, and petitioners' daughter, Wendy Butler Gord.↩
4. See , cert. denied .↩
*. Petitioner had previously purchased these gold coins in his own name and later sold such coins in his own name.↩
5. This return was prepared by Donald Fisher based on information provided by petitioner.↩
6. SEC. 170. CHARITABLE, ETC., CONTRIBUTIONS AND GIFTS. (a) Allowance of Deduction.-- (1) General Rule.--There shall be allowed as a deduction any charitable contribution (as defined in subsection (c)) payment of which is made within the taxable year. * * * (c) Charitable Contribution Defined.--For purposes of this section, the term "charitable contribution" means a contribution or gift to or for the use of-- * * * (2) A corporation, trust, or community chest, fund, or foundation-- (A) created or organized in the United States or in any possession thereof, or under the law of the United States, any State, the District of Columbia, or any possession of the United States; (B) organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes * * *; (C) no part of the net earnings of which inures to the benefit of any private shareholder or individual * * *.↩
7. In view of our finding with respect to the addition to tax under section 6653(b), we need not consider respondent's alternative position with respect to the additions under sections 6651(a) and 6653(a).↩